## MYERS *v.* HURLEY MOTOR COMPANY.

CERTIFICATE FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 65.   Argued December 9, 1926.—Decided January 3, 1927.

1. The fact that a contract made in infancy was induced by the infant's fraudulent misrepresentation of his age, does not estop him from disaffirming the contract and maintaining his action to recover money paid under it. *Sims* v. *Everhardt,* 102 U. S. 300. P. 22.

2. But where the action is for money had and received, equitable principles apply defensively, and by way of recoupment, to prevent a recovery of that to which the plaintiff is not in equity and good conscience entitled. P. 23.

3. The infant, representing himself as of age, bought and obtained possession of an automobile, upon conditional sale, but paid only part of the price. The vendor took back the car. In an action by the vendee, who disaffirmed upon reaching his majority, the vendor was equitably entitled to recoup from the amount which the vendee had paid, the amount which the vendor was required to expend to put the car in as good condition as it was when so sold and delivered. P. 27.

RESPONSE to questions certified by the Court of Appeals of the District of Columbia, on appeal from a judgment recovered on a counterclaim by the Motor Company, in an action by Myers to recover money and money's worth paid in infancy on the purchase of an automobile.

*Mr. George P. Lemm* for Myers.

An estoppel is not applicable to infants. *Sims* v. *Everhardt,* 102 U. S. 300; *Tobin* v. *Spann,* 85 Ark. 556; *Tucker* v. *Moreland,* 10 Pet. 58; *Conrad* v. *Lane,* 26 Minn., 389; *Burdett* v. *Williams,* 30 Fed. 697; *Price* v. *Jennings,* 62 Ind. 111; *Raymond* v. *General Motorcycle Sales Co.,* 230 Mass. 54.

In *Sims* v. *Everhardt, supra,* we find the established rule to be that an infant, who avoids a purchase by him under a contract of a conditional sale and returns the article purchased, is not required to account to the seller for wear, tear, and depreciation for the article while in his hands. *MacGreal* v. *Taylor,* 167 U. S. 688; *McCarthy* v. *Henderson,* 138 Mass. 310; *Whitcomb* v. *Joslyn,* 51 Vt. 79.

In the case under consideration, the specific consideration which passed to the infant plaintiff, namely, the automobile, was returned to or taken possession of by the

defendant. Plaintiff has done all the law requires of him as a condition to the avoidance of his contract.

*Mr. Henry C. Clark,* with whom *Messrs. Roger J. Whiteford* and *Walter B. Guy* were on the brief, for the Hurley Motor Co.

Infancy is an equitable shield which may be lost by unconscionable conduct. Equity, through the doctrine of *parens patriae,* undertook to relieve against the difficulties which resulted from undue limitation of the capacity of an infant. This took the form of authorizing transactions through guardians, which disposed of the infant's property, and also of upholding acts of the infant which equity would have required him to perform. Infants are not enveloped in absolute incapacity; they are not exempted from all responsibility. The privilege of infancy is not a privilege to cheat civilly any more than to cheat criminally. *MacGreal* v. *Taylor,* 167 U. S. 688; *Fitts* v. *Hall,* 9 N. H. 441; *Kilgore* v. *Jordan,* 17 Tex. 341; *Eckstein* v. *Frank,* 1 Daly 334; *Parker* v. *Hayes,* 39 N. J. Eq. 469; *Rice* v. *Boyer,* 108 Ind. 472; *Commander* v. *Brazil,* 88 Miss. 668; *La Rosa* v. *Nichols,* 92 N. J. L. 375.

We are not dealing with an innocent infant, or one who has been imposed upon, but with an infant admittedly guilty of positive fraud. Nothing is offered in mitigation of the fraud. The only response is his attempt to hide behind his few months minority, a brazen attempt to use the privilege afforded for his protection as a sword of iniquity. The infant in *Sims* v. *Everhardt,* 102 U. S. 300, was compelled by the clear duress of her husband to execute a deed. The innocence of the infant is conspicuous throughout the opinion. This Court not only recognized, but placed its approval upon the distinction between an innocent infant and one guilty of positive fraud, at the time it denied certiorari in *Carmen* v. *Fox Film Corp.,* 255 U. S. 569.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The facts which give rise to the questions of law in respect of which the instruction of this court is asked, are set forth in the certificate as follows:

" Clarence H. Myers, plaintiff in error, on the 28th day of April, 1923, then a minor of the age of 20 years, represented to the defendant company that he was 24 years of age, and engaged in the hacking business in the District of Columbia; whereupon he contracted with defendant for a Hudson touring car at the price of $650.00, upon terms set out in a conditional sales contract. Plaintiff turned in as cash payment a Ford touring car at the price of $250.00, which was subsequently sold by defendant company for that price. Plaintiff subsequently made payments on the contract to the amount of $156.12, making a total payment on the contract of $406.12.

" On October 3, 1923, plaintiff being in default in his payments, defendant company repossessed itself of the Hudson car, under the terms of its sale agreement. Plaintiff attained the age of 21 years on October 21, 1923, and, on the 1st day of November following, disaffirmed his contract and demanded the return of $406.12, the amount paid upon the contract. Upon defendant's refusal to comply with plaintiff's request, the present suit was brought in the Municipal Court of the District of Columbia by plaintiff to recover $406.12, the amount paid by him.

" Defendant company set up, as a counter claim, the amount of $525.96, supported by a bill of particulars, showing that this amount was required in the way of repairs and expense to place the Hudson car in as good condition as it was when sold to plaintiff. The Municipal Court gave judgment upon defendant's plea of set off for the full amount of $525.96, from which the case was brought to the Court of Appeals on writ of error.

" The misrepresenation by plaintiff of his age, sup-
ported by evidence that he had the appearance of a man
of 24, at the time the contract was made, and the depre-
ciation in the value of the Hudson car from hard and
abusive usage, are not denied by plaintiff, and may be
accepted for the purpose of this case as conceded facts.
Neither does it appear that any deception or misrepre-
sentations were made by the defendant in order to induce
the making of the contract, nor that the contract was
in any respect an unfair one.  Plaintiff rests his case
entirely upon his absolute right, on becoming of age, to
disaffirm his contract, and recover the amount which he
had paid thereon, regardless of any damage the defend-
ant may have sustained, either from his misrepresenta-
tion as to his correct age, or from his abusive use of the
Hudson car which resulted in the depreciation above set
forth."

Two questions are certified:

1. Is the plaintiff, by reason of the misrepresentations
as to his correct age, estopped from maintaining an action
to recover the amount paid under the conditional sales
contract upon the purchase price of the Hudson car?

2. If the plaintiff is not so estopped, may defendant,
by way of affirmative defense against plaintiff's claim,
set off the amount paid for the repair of the damaged
Hudson car, or so much thereof as will equal plaintiff's
claim?

*First.* In *Sims* v. *Everhardt,* 102 U. S. 300, 313, which
was a suit in equity, this court said:

" Without spending time to look at the reason, the
authorities are all one way.  An estoppel *in pais* is not
applicable to infants, and a fraudulent representation of
capacity cannot be an equivalent for actual capacity.
*Brown* v. *McCune,* 5 Sandf. (N. Y.) 224; *Keen* v. *Cole-
man,* 39 Pa. St. 299.  A conveyance by an infant is an
assertion of his right to convey.  A contemporaneous

declaration of his right or of his age adds nothing to what is implied in his deed. An assertion of an estoppel against him is but a claim that he has assented or contracted. But he can no more do that effectively than he can make the contract alleged to be confirmed."

The statement that the authorities are all one way in holding that an estoppel *in pais* is not—that is to say, is never—applicable to infants, at least of doubtful accuracy when made, is clearly incorrect at the present time. A review shows that many, perhaps the major part, of the state decisions hold that in equity the rule is otherwise. See Bigelow on Estoppel (6th Ed.) 627; 1 Williston on Contracts, § 245. In any event, the most that can be said is that the decisions upon that subject are conflicting and to some degree in confusion. The doctrine of the *Everhardt* case, however, was followed in *MacGreal* v. *Taylor,* 167 U. S. 688, 696, and has been made the basis of decisions in several of the lower federal courts, *Bartlett* v. *Okla. Oil Co.,* 218 Fed. 380, 391; *Alfrey* v. *Colbert,* 168 Fed. 231, 235; *Sanger* v. *Hibbard,* 104 Fed. 455, 457; and has become the established federal rule. Likewise it has been accepted and followed by many of the state courts. See, for example, *Tobin* v. *Spann,* 85 Ark. 556, 559; *Cobbey* v. *Buchanan,* 48 Neb. 391, 394; *Kirkham* v. *Wheeler-Osgood Co.,* 39 Wash. 415, 424; *Alvey* v. *Reed,* 115 Ind. 148, 149. In this state of the matter, we are not disposed now to reëxamine the question in the light of the conflict of authority; but, following the *Everhardt* case, we hold that the doctrine of estoppel *in pais* cannot be invoked to defeat plaintiff's action.

*Second.* While adhering to the determination in the *Everhardt* case, that the doctrine of estoppel *in pais* does not apply to an infant, we are of the opinion that this does not require us, under the facts of the present case, to deny defendant the benefit of its affirmative defense.

In the *Everhardt* case, there was a dismissal by the court below on the ground that it did not appear that there was a disaffirmance by the complainant within a reasonable time after she attained her majority. The bill offered to do equity (p. 301), but this court, in reversing the decree and remanding the cause, expressed no opinion in respect of the equities by which a decree for complainant might be conditioned. The effect of an affirmative defense such as we have here was neither involved nor considered. Whether an infant who fraudulently misrepresents his age and thereby induces the making of a contract can, when he brings a suit in equity in respect of the matter, be compelled to do equity, is a question not concluded by that decision. In *MacGreal* v. *Taylor, supra,* after first calling attention to the fact (p. 698) that the opinion in the *Everhardt* case did not deal with the counter-equities, this court said (p. 700): "A court of equity will look at the real transaction, and will do justice to the adult if it can be done without disregarding or impairing the principle that allows an infant, upon arriving at majority, to disaffirm his contracts made during infancy."

Here the action brought by the *quondam* infant is one for money had and received—the payments under the disaffirmed contract having been either in money or in property converted into money before the disaffirmance. Such an action, though brought at law, is in its nature a substitute for a suit in equity; and it is to be determined by the application of equitable principles. In other words, the rights of the parties are to be determined as they would be upon a bill in equity. The defendant may rely upon any defense which shows that the plaintiff, in equity and good conscience is not entitled to recover in whole or in part. *Rathbone* v. *Stocking,* 2 Barb. 135, 145–147; *Barr* v. *Craig,* 2 Dall. 151, 154; *Wright* v. *Butler,* 6 Wend. 284, 290; *Eddy* v. *Smith,* 13 Wend. 488,

490; *Christie* v. *Durden,* 205 Ala. 571, 572; *Gifford* v. *Wilcox,* 81 Ind. App. 378, 381.

It has been held that where an infant after coming of age seeks the aid of a court of equity to avoid a contract, under which he has received property, and restore to him the possession of obligations with which he has parted, he will be required, wholly irrespective of his own good faith in the transaction, to do equity, which may extend to compelling him to make full satisfaction for the deterioration of the property due to his use or abuse of it.

In *Gray* v. *Lessington,* 2 Bosw. 257, the plaintiff, alleging her infancy, brought suit to rescind a contract of sale and to cancel a mortgage and unpaid notes. A decree in her favor imposed the condition that she should restore the property and account for the deterioration arising from its use. The court, sustaining this on appeal, said (p. 262):

"And when it becomes necessary for her to go into a court of equity, to cancel her obligations, or regain the pledge given for their performance, seeking equity, she must do equity. Making full satisfaction for the deterioration of the property, arising from its use, is doing no more. Presumptively, she has derived from the use of the property a profit, or benefit, equivalent to such deterioration. Whether that presumption is, under all circumstances, conclusive, it is not necessary to say, since there is nothing in this case to rebut the presumption. The deterioration here, is found to have resulted from the use which she has enjoyed; and if it resulted from an abuse of the property, the plaintiff's equity is no greater."

The same rule is recognized in *Hillyer* v. *Bennett,* 3 Edw. Ch. 222, 225. In that case, after pointing out that the acts and deeds of an infant are voidable at his election, that if sued at law or in equity he may plead his infancy in bar, and that if he has agreed to sell and deliver

personal property he may disaffirm the contract and bring trover to recover it back, the vice-chancellor said:

" But if, after he comes of age, he seeks to disaffirm and avoid his contract in a court of equity and files his bill there for the purpose of obtaining its aid, in restoring to himself the possession of the property he has parted with, a court of equity must deal with him as it would with any other adult party and require him to do equity before he shall have equity done unto him. He must restore what he received when he parted with the property which he seeks to get back; especially, if it appears that the other dealt with him in ignorance of the fact of his nonage. This equitable and just principle is recognized by Woodworth, J., 7 Cowen, 183, and is warranted by several cases there cited."

See also, 1 Story's Equity (11th Ed.) § 240; *Carmen* v. *Fox Film Corporation,* 269 Fed. 928, 931; *Rice* v. *Butler,* 160 N. Y. 578; *International Land Co.* v. *Marshall,* 22 Okla. 693, 708.

How far the equitable maxim, that he who seeks equity must do equity, applies generally in suits brought for relief because of infancy, we need not inquire; nor do we need here to go as far as the authorities just cited. The maxim applies, at least, where there has been, as there was here, actual fraud on the part of the infant. When an infant of mature appearance, by false and fraudulent representations as to his age, has induced another person to sell and deliver property to him, it is against natural justice to permit the infant to recover money paid for the property without first compelling him to account for the injury which his deceit has inflicted upon the other person.

Our conclusion that the affirmative defense is available in this action does not rest upon the doctrine of estoppel, though the result may be the same. It recognizes the

plaintiff's right to repudiate his promise and sue for the return of his payments, and his immunity from a plea of estoppel in so doing. Its effect is not to enforce the disaffirmed contract directly or indirectly, but to allow him to invoke the aid of the court to enforce an equitable remedy arising from the disaffirmance, only upon condition that "seeking equity, he must do equity." And the application of the maxim is not precluded because defendant's claim might not be enforceable in any other manner. 1 Pomeroy's Equity, § 386; *Sturgis* v. *Champneys,* 5 Myl. & C. 97, 102; *Farmers' Loan & Trust Co.* v. *Denver, L. & G. R. Co.,* 126 Fed. 46, 51.

The question remains whether defendant should have judgment for the amount by which its expenditures exceeded plaintiff's demand. We are not advised of any statutory rule upon the subject applicable in the District of Columbia; and the matter must be determined in accordance with general principles. The defense, in effect, is that the plaintiff was guilty of tortious conduct to the injury of the defendant in the transaction out of which his own cause of action arose. In such case it is well settled that the relief is by way of recoupment—that is, that the amount of defendant's damage can be allowed only in abatement or diminution of plaintiff's claim—and that defendant cannot, at least in that action, recover any excess. *Winder* v. *Caldwell,* 14 How. 434, 443; *Dushane* v. *Benedict,* 120 U. S. 630, 642; *Ward* v. *Fellers,* 3 Mich. 281, 287–291; *Waterman* v. *Clark et al.,* 76 Ill. 428, 430; *Holcraft* v. *Mellott,* 57 Ind. 539, 544.

It follows that the first question should be answered in the negative and the second question in the affirmative, with the qualification that the amount allowed defendant shall not exceed the amount of plaintiff's claim.

*It is so ordered.*